**IN THE SUPERIOR COURT OF GUAM** By:_____

| | |
|---|---|
| Sedfrey M. Linsangan,<br><br>Petitioner,<br><br>vs.<br><br>Government of Guam, Linda DeNorcey, Lourdes Leon Guerrero (Acting in their Official Capacity),<br><br>Respondents. | **Superior Court Case No. SP0050-20**<br><br>**DECISION AND ORDER RE PETITION AND MOTION TO DISMISS** |

In this proceeding, the Court addresses Sedfrey M. Linsangan's Petition to the Court to release quarantined residents arriving from Manila and to revoke the portions of Executive Order Nos. 2020-06 and 2020-07 which suspend the Open Government Law. The Court also reviews Respondents' Motion to Dismiss. The Court determines: (1) Linsangan has properly served the Office of the Attorney General; (2) Linsangan has not properly served the Governor of Guam, Lourdes Leon Guerrero, or Linda DeNorcey, but may cure the improper service; (3) the issue of releasing quarantined residents arriving from Manila is moot; and (4) any Open Government Law violation claims are unripe. The Court therefore GRANTS Respondents' Motion to Dismiss and DENIES Linsangan's Petition.

## I. FACTUAL BACKGROUND

Linsangan challenges actions taken by the Governor and the Director of the Department of Public Health and Social Services (DPHSS) as part of their response to the COVID-19 pandemic. Linsangan first objects to the Governor's quarantine of travellers arriving from the

Philippines. In Executive Order No. 2020-04, the Governor ordered that "all persons who are non-residents who have been in a country with confirmed COVID-19 cases for more than one (1) week and do not possess a DPHSS recognized and certified document that attests that they are not infected with COVID-19, shall be restricted entry into Guam" and quarantined. The Court takes judicial notice of facts it recently found in *In re Travelers Arriving in Guam from Manila, Philippines, on or about March 19, 2020,* SP0049-20:

> 5. Restricting entry into Guam was necessary to reduce the number of potential sources of COVID-19 on Guam and to allow DPHSS sufficient time to investigate the sources of the confirmed COVID-19 cases.
>
> 6. DPHSS determined that a significant number of confirmed COVID-19 cases were linked to travel from the Philippines.
>
> 7. ...the number of confirmed cases [in] the Philippines increased twenty-fold within the ten days prior to March 19, 2020.
>
> \*\*\*
>
> 14. ... On March 23, 2020, the Governor's Physicians' Advisory Group stated that if Guam maintains its current spread rate, Guam's healthcare system for critically ill COVID-19 patients will soon be overwhelmed.
>
> 15. Under her authority under 10 GCA § 10108 and Executive Order No. 2020-03, on March 19 and 20, 2020, DPHSS' Director enacted a mandatory quarantine at a government facility for all persons arriving on Guam who had traveled[1] from the Philippines.
>
> \*\*\*
>
> 25. Guam does not have the resources to monitor all potentially COVID-19 infected individuals if it sends travellers home to self-quarantine instead of quarantining them at a government facility. Releasing persons arriving from a COVID-19 "hot spot" such as the Philippines will require DPHSS to do frequent monitoring of hundreds of individuals--resources DPHSS does not currently possess.

---

[1] Linsangan's Petition concerns quarantined "residents;" this mirrors the language of the scope of the quarantine authorized in Executive Order No. 2020-04. It appears, however, that the Government quarantined both residents and non-residents arriving from the Philippines.

*Id.* (Order re Pets. for Order Authorizing Continued Isolation or Quarantine, Apr. 1, 2020). After making such findings, the Court ordered that the Government release all persons from quarantine after a 14 day period if such persons tested negative for COVID-19, did not show symptoms associated with COVID-19, and did not come into contact with someone who has tested positive for COVID-19. *Id.*

The Court also takes judicial notice of lawsuits challenging the quarantine for travellers arriving on March 20, 21, 22, and 23, 2020, from the Philippines or with recent travel to the Philippines, and the Court's similar order allowing for such persons' release after 14 days if they tested negative, did not show symptoms associated with COVID-10, and did not come into contact with someone who tested positive for COVD-19. *See* SP0051-20; SP0052-20; SP0053-20; and SP0054-20.

On March 29, 2020, DPHSS' Director issued DPHSS Guidance Memo No. 2020-03 which required that effective March 31, 2020, all persons entering Guam by air or sea shall be subject to quarantine at a government-designated facility for a period of 14 days from the date of entry. Decl. James L. Canto II, Ex. E (Apr. 10, 2020). This Directive effectively extended the quarantine to all arriving passengers regardless of origin.

Linsangan also challenges Executive Order No. 2020-06, which suspended portions of the Open Government Law--specifically, 5 GCA §§ 8103, 8107-8110, 8114, and 8115. Public agencies, however, were required to document their meetings in minutes. Executive Order No. 2020-06 ¶ 5. Four days later, the Governor issued Executive Order No. 2020-07, which authorized public bodies to hold public meetings via teleconference and to make such meetings accessible telephonically or electronically to all members of the public. Public bodies were also

required to submit meeting information for posting on the Attorney General's website in advance of the meeting. Executive Order No. 2020-07 ¶ 4.

## II.　**PROCEDURAL BACKGROUND**

On the same day Linsangan filed his Petition, the Court issued an Order requiring him to serve the Petition and a Summons on Respondents and to provide proof of such service. Order (Mar. 30, 2020). The next day, Linsagan filed a Summons and a "Proof of Service Justification." The Justification stated that Linsangan "made his worker deliver the Summons and Petition" to the Office of the Attorney General, but it was closed. Linsangan represents that he then emailed the documents to Shannon Taitano, Deputy Attorney General. Proof Serv. Justification (Mar. 31, 2020).

The Court determined that Linsangan's Summons was defective because it failed to notify Respondents of the time within which they must appear and defend. Order (Apr. 1, 2020). The Court ordered Linsagan to amend the Summons and re-serve Respondents. Order (Apr. 1, 2020). The next day, Linsangan filed a Proof of Service which indicated: "Summons was delivered to the Governors office signed by the Police Officer along with the Complaint. Linda DeNorcey inform her Secretary or front office not to accept the Summons and Complaint, Instead bring it to AG's office. I emailed the Amended Summons to Deputy A.G. Shannon Taitano since nobody in their office and no answer in the phone." Proof of Serv. (Apr. 2, 2020). The (second) Proof of Service included a copy of a Summons which directed Respondents to respond to the Petition within five days. The attached Summons appears to have a signature of receipt by a police officer.

On April 3, 2020, recognizing the urgency of the issues presented, the Court issued an Order for Briefing allowing Respondents five days to respond to the Petition. Order for Briefing (Apr. 3, 2020). Respondents timely filed a Motion to Dismiss.

## III. LAW AND DISCUSSION

### A. Method of Service of Summons

The Government challenges the method of service and the contents of the Amended Summons. Under Guam Rule of Civil Procedure 4(i), service may be effected on the Government of Guam and its officers by delivering a copy of a summons and complaint to the Attorney General or to an assistant attorney general or by sending a copy by registered or certified mail to the Office of the Attorney General, and also by sending the summons and complaint by registered or certified mail to the officer. In other words, to complete service, Linsangan must have served the Attorney General personally or by mail and the individual Respondents by mail.

The Court first reviews whether Linsangan properly served the Attorney General. The Attorney General claims that to its knowledge, it has not received a hand-delivered copy of the Petition and Summons nor a certified or registered mailing of the same. Decl. James L. Canto II at ¶ 7. However, as Linsangan indicates, the Office of the Attorney General has closed its offices during the public emergency. At the hearing on this Motion, the Attorney General represented that its administrative offices have remained open, but also conceded that the public may be informed otherwise. According to the Attorney General's website, "**Service of process will be available only by email to each respective division.**" http://oagguam.org/ (originally visited on March 31, 2020; last visited April 18, 2020) (emphasis in original). The site then links to general email accounts such as "civillitigation@oagguam.org" and "administration@oagguam.org." *Id.*

Linsangan was unaware that he could email such addresses, but did email his Petition and Amended Summons to Shannon Taitano, the Deputy Attorney General. Linsangan informed the Court at the hearing that he works with Taitano in unrelated litigation and that Taitano did not respond to his email. Though Linsangan did not know of the Attorney General's website's advisory, there is no reason to prevent him from using serve by email as the website directs.

The Court also takes judicial notice of Supreme Court of Guam Administrative Order No. ADM20-210 which states that during the Court's closure due to COVID-19, "parties shall serve documents through electronic means or by email, except for those limited instances in which personal service is required." Notably, in Rule 4(i)(1), personal service is not required to serve the Attorney General. Instead, a litigant may either deliver a copy of a summons and complaint to the Attorney General *or* may send the Summons and Complaint by mail. Because personal service was not required, by the language of ADM20-210, Linsangan could utilize electronic means to serve the Attorney General.

Under the circumstances, the Court finds that Linsangan has effectuated service on the Attorney General by emailing the documents to Taitano, who qualifies under Rule 4(i)(1) as an "assistant attorney general." Personal service was not possible because the Attorney General's offices are closed as expressed on its website. As further advised on the website, in lieu of personal service, the Attorney General accepted service of documents by email. Also, service by mail was impractical given the closure of the Attorney General's office. Moreover, the Guam Supreme Court permitted service by electronic means. For these reasons, service on the Attorney General has been accomplished.

As for the Governor and DeNorcey, Rule 4(i)(2) required Linsangan to serve the Attorney General and "also send[] a copy of the summons and complaint by registered or certified mail to

the officer." To afford due process, there must be strict compliance with service requirements--even for pro se litigants. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). Actual notice does not excuse improper service. *Id.*; *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991). Linsangan has not mailed the Governor or DeNorcey a copy of the Petition and Summons as Rule 4(i) requires. This means that this Court lacks jurisdiction over the individual Respondents until they properly receive service of process. *Direct Mail Specialists v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

The Rules of Civil Procedure do offer a cure for defective service. Rule 4(i)(3) provides a party a "reasonable time to serve process under Rule 4(i) for the purpose of curing the failure to serve . . . all persons required to be served in an action governed by Rule 4(i)(2)(A), if the plaintiff has served the Attorney General of Guam." This provision "saves the plaintiff from the hazard of losing a substantive right because of failure to comply with the complex requirements of multiple service under" Rule 4(i). Fed. R. Civ. P. 4 advisory committee note (1993). Nonetheless, as a later discussion shows, the Court GRANTS the Motion to Dismiss on other grounds, which makes proper service on the individual Respondents moot.

B. **Adequacy of Summons**[2]

Respondents complain that Linsangan's Amended Summons stated the incorrect number of days they had to respond to the Petition. Linsangan advised Respondents that they had five days to respond; Rule 12, however, gives the government 60 days.

This is a meritless defense. As it concerns the contents of a summons, Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the

---

[2] Linsangan complains that the Court does not have a form Summons. A sample Summons is attached as Form No. 1 to the Guam Rules of Civil Procedure. http://www.guamcourts.org/CompilerofLaws/CourtRules/ GRCP%2020140729.pdf.

complaint. *United Food & Commercial Workers Union, Locals 197, 373, 428, 588, 775, 839, 870, 1119, 1179 & 1532, by United Food & Commercial Workers Int'l Union, AFL-CIO v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984) (when summons states the incorrect time to answer, dismissal is generally not justified absent a showing of prejudice). The Government has not shown that it is prejudiced by Linsangan's incorrectly stated Amended Summons.

## C. Standing, Mootness, & Ripeness

Linsangan asserts he has automatic standing under the United States Constitution's First Amendment "Right to Petition." The First Amendment states that "Congress shall make no law … [abridging] the right of the people … to petition the Government for a redress of grievances." U.S. Const. amend. I. Guam's Organic Act Bill of Rights contains a nearly identical provision: "[n]o law shall be enacted in Guam … [abridging] the right of the people … to petition the government for a redress of their grievances." 48 U.S.C. § 1421b(a). Due to their similarity, the Guam Supreme Court interprets the Organic Act's right to petition "in the same manner as the United States Supreme Court has interpreted the same right." *Guam Greyhound, Inc. v. Brizill*, 2008 Guam 13 ¶ 16.

The right to petition includes the right of access to the courts. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). However, access-to-courts rights do not exist in an "abstract, freestanding" form. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "[T]hey are tethered to principles of Article III standing." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1244 (9th Cir. 2013). The doctrine of standing "prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. "It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual

harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution. *Id.*

Linsangan therefore does not enjoy automatic standing due to his "Right to Petition." Instead, he must possess either statutory standing or common-law standing before enjoying access to the courts. *Benavente v. Taitano,* 2006 Guam 15 ¶¶ 20–21. A court looks to the language of the relevant statute to determine whether a party has statutory standing. *Id.* Absent statutory standing, a plaintiff must satisfy "the irreducible constitutional minimum of standing" under Article III of the U.S. Constitution: (1) have suffered an injury-in-fact, (2) demonstrate a causal connection between the injury and the complained-of conduct, and (3) show that a favorable decision by the court will likely redress the injury. *Id.* ¶ 14. A plaintiff must demonstrate standing for each and every claim pursued. *Davis v. Federal Elec. Comm'n,* 554 U.S. 724, 734 (2008).

For Linsangan's first request for relief, the Court finds the question of his standing moot. Courts may not give opinions upon moot questions or abstract propositions. *Town House Dep't Stores, Inc. v. Ahn,* 2000 Guam 32 ¶ 9. "A claim becomes moot only when the issues are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *United States v. Ripinsky,* 20 F.3d 359, 361 (9th Cir.1994)). It is when "intervening events... have rendered it impossible for the reviewing court to grant the complaining party effectual relief." *Rapadas v. Benito,* 2011 Guam 28 ¶ 16 (quotations omitted). Mootness can arise at any stage of litigation. *See Calderon v. Moore,* 518 U.S. 149, 150 (1996) (citations omitted). Linsangan asks the Court to release individuals who were quarantined after flying in from Manila. Unless they have tested positive for COVID-19 or have come into contact with persons who have tested positive for COVID-19, any individuals who were quarantined after arriving on Guam from

Manila have since been released, and therefore the Court cannot grant Linsangan effectual relief as to his first claim.

For his second request, Linsangan petitions the Court to revoke the section of Executive Order No. 2020-06 suspending sections 8103, 8107-8110, 8114, 8115 of Title 5 of the Guam Code Annotated, Guam's Open Government Law, as unconstitutional. Executive Order No. 2020-06 ¶ 5. Interestingly, section 8115 confers Linsangan with statutory standing: "Any person shall have standing to sue for the enforcement of this Chapter." 5 GCA § 8115(a).

Suspending a statutorily conferred right to petition is solely within the power of the Legislature: "the Legislature has complete power to determine the rights of individuals. It may create new rights or provide that rights which have previously existed shall no longer arise." *Guam Greyhound, Inc. v. Brizill*, 2008 Guam 13 ¶ 18.

Though the Governor may "through an executive order suspend, the provisions of any regulatory statute prescribing procedures for conducting local business, or the orders, rules and regulations of any government of Guam agency, to the extent that strict compliance with the same would prevent, hinder or delay necessary action (including emergency purchases) by the public health authority to respond to the public health emergency, or increase the health threat to the population", the Governor's emergency powers do not expressly give her the right to suspend statutes conferring standing. 10 GCA § 19403. Moreover, the Government does not explain how strictly complying with a statute granting standing hinders the public health authority's response to a public health emergency.

Assuming therefore that Linsangan has standing for his second claim, the Court now addresses its viability. During the hearing, Linsangan argued that the Governor exceeded her

emergency powers by suspending the Open Government Law, and that she violated the Open Government Law by disallowing public attendance and participation at government meetings.

The Governor's emergency powers allow her to suspend the regulations of any government of Guam agency "to the extent that strict compliance with the same would prevent, hinder or delay necessary action . . . by the public health authority to respond to the public health emergency, or increase the health threat to the population." 10 GCA § 19403. As she stated, "while important functions of our government are executed by public agencies in meetings that are open to the public, such publicly attended meetings would jeopardize our efforts to slow the spread of COVID-19 throughout our island . . . ." Executive Order No. 2020-06 at 1. She effectively mandated that the public could not attend or participate at government meetings due to the increased possibility that COVID-19 could spread more easily and rapidly. Four days after releasing Executive Order No. 2020-06, she released Executive Order No. 2020-07, which ensured public attendance and participation at government board and commission meetings by authorizing teleconferencing and making meetings telephonically or otherwise electronically accessible to all members of the public. Even if the Governor initially exceeded her emergency powers with Executive Order 2020-06, Executive Order No. 2020-07 moots the issue because the public can now attend and participate in meetings, albeit by electronic means.

Linsagan also does not allege a meeting occurred in violation of the Open Government Law during the four days between Executive Orders. He stated during the hearing that he has not attempted to attend a meeting and that he does not know if a meeting occurred in violation of the Open Government Law. When an injury is speculative or contingent, a claim is unripe. *People of Guam v. Gay*, 2007 Guam 11 ¶ 8; *see also Matter of Guardianship of Moylan*, 2018 Guam 15 ¶ 7 (finding that ripeness asks whether the facts have developed sufficiently so that an

injury has occurred or is likely to occur, rather than being contingent or remote). Until Linsangan can demonstrate an Open Government Law violation during those four days between Executive Orders, his claim lacks ripeness because he does not allege any past or imminent meeting where public access and participation was inhibited.

## IV.    CONCLUSION

The Court GRANTS Respondents' Motion to Dismiss as Linsangan's request for release of the passengers is moot and his claim that the Open Government Law was violated is unripe. The Court also finds that Linsangan did not properly serve the individual Respondents. Linsangan's Petition is therefore DENIED.

SO ORDERED this 19th day of April 2020.

HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

Appearing Parties:
Sedfrey M. Linsangan, *pro se*
Assistant Attorney General James L. Canto, II, Office of the Attorney General, for Respondents